No. 18-2893
*Lin v. Garland*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of September, two thousand twenty-one.

PRESENT:
        DENNIS JACOBS,
        SUSAN L. CARNEY,
        RICHARD J. SULLIVAN,
            *Circuit Judges.*

_____

ZHAN LIN,

      *Petitioner*,

         v.                               No. 18-2893

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,

      *Respondent*.

_____

FOR PETITIONER:              JOSHUA E. BARDAVID, Esq., New York, NY.

FOR RESPONDENT:           SARA J. BAYRAM, Trial Attorney, Office of Immigration Litigation (Brian Boynton, Acting Assistant Attorney General; Melissa Neiman-Kelting, Assistant

Director, Office of Immigration Litigation; Christopher Buchanan, Trial Attorney, Office of Immigration Litigation, *on the brief*), United States Department of Justice, Washington, DC.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("BIA") decision, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED.**

Petitioner Zhan Lin, a native and citizen of the People's Republic of China, seeks review of a 2018 decision of the BIA affirming a 2017 decision of an Immigration Judge ("IJ") denying Lin's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Zhan Lin*, No. A205 888 744 (B.I.A. Sept. 20, 2018), *aff'g* No. A205 888 744 (Immig. Ct. N.Y. City Sept. 12, 2017). We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as needed to explain our decision to deny the petition for review.

We have reviewed the IJ's decision as modified by the BIA, *see Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005), reviewing adverse credibility determinations under the substantial evidence standard and upholding the agency's findings of fact unless any reasonable adjudicator would be compelled to find that the agency erred. *See* 8 U.S.C. § 1252(b)(4)(B); *see also Hong Fei Gao v. Sessions*, 891 F.3d 67, 76-77 (2d Cir. 2018); *Majidi v. Gonzales*, 430 F.3d 77, 79-80 (2d Cir. 2005).

An applicant's testimony may be sufficient to sustain his burden of proof if it "is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). "Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, . . . the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, [and] the consistency of such statements with other evidence of record . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." *Id.* § 1158(b)(1)(B)(iii). As to credibility, we will defer to an IJ's

determination "unless . . . it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008).[1]

In determining whether the applicant has met his burden of proof, the IJ "may weigh the credible testimony along with other evidence of record," and where the IJ "determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). A failure to corroborate testimony "may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007).

Here, the IJ determined that Lin was not credible regarding his critical claim that he was persecuted in China based on his religious practice. On appeal, Lin claims the IJ's adverse credibility finding is unsupported by the record evidence. Lin's arguments fail to persuade. The IJ rested her adverse credibility determination primarily on (1) Lin's evasive responses during his testimony regarding a visit with his aunt in China and regarding whether he had been convicted of a crime, and (2) Lin's inconsistent testimony regarding whether the aunt whom he contacted when he arrived in the United States was in Texas or Wisconsin. Because the IJ's adverse credibility finding is supported by substantial evidence in the record, we defer to the agency's adverse credibility determination and deny the petition.

1.      **Evasiveness.** First, the agency reasonably found Lin to have been evasive on two significant points during his hearing. *See* 8 U.S.C. § 1158(b)(1)(B)(iii).[2] The IJ found, and

---

[1] Unless otherwise noted, in quoting caselaw, this Order omits all alterations, citations, footnotes, and internal quotation marks.

[2] The IJ stated: "As for [Lin's] demeanor, the court found [Lin] [had a] tendency to be repetitive and evasive, especially when [Lin] was asked to provide specifics and details." Special App'x at 17. The BIA affirmed on the record. Evidence regarding a petitioner's "demeanor" generally refers to evidence that is observable by the trier of fact, such as "the look or manner of the witness: his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration." *Zhang v. U.S. I.N.S.*, 386 F.3d 66, 73-74 (2d Cir. 2004), *overruled on other grounds by Shi Liang Lin v. U.S. Dep't of Just.*, 494 F.3d 296 (2d Cir. 2007); *see also Chen v. U.S. Dep't of Just.*, 426 F.3d 104, 113 (2d Cir. 2005) ("[T]he IJ's ability to observe the witness's demeanor places her in the best position to evaluate whether apparent problems in the witness's testimony suggest a lack of credibility . . . ."). Beyond stating that Lin provided "repetitive" and "non-responsive"

3

the BIA affirmed based on its review of the transcript, that Lin was non-responsive and evasive when he testified regarding the duration of his visit with his aunt at his grandmother's home in China and when he was asked specific questions about whether he had been charged with a crime. The record reasonably supports the IJ's interpretation. As the IJ described, Lin "was asked no less than five (5) times to provide the specific time period of his first visit with the aunt during the alleged Sept 2011 visit," and he was "evasive" when "asked to specifically state if gifts were exchanged between him and his visiting aunt." Special App'x at 17. Lin was also non-responsive when asked specific questions about whether he had been charged with a crime.

The IJ's questions about Lin's criminal prosecution and his aunt's visit in China (a visit that was related to answering an important question: when Lin left China for the United States) were relevant to establishing Lin's claims for asylum, withholding of removal, and relief under the CAT. Considering the totality of the circumstances, we find no reversible error in the determination that Lin's non-responsive and evasive statements reasonably supported the IJ's adverse credibility determination. *Majidi*, 430 F.3d at 81 n.1.

**2.** **Inconsistencies.** Second, the agency's identification of inconsistency in Lin's testimony regarding his aunt's location in the United States when Lin first called her after entering the country is reasonably supported by evidence in the record. The agency found, and the record confirms, that Lin testified inconsistently regarding whether his aunt was at a restaurant in Texas or Wisconsin when Lin called her from Texas. Although Lin initially testified that his aunt was working at a restaurant in Texas, he later testified that she was in Wisconsin. The IJ found "not convincing" Lin's explanation for confusing Texas and Wisconsin. Special App'x at 14.

---

answers during his testimony, the IJ did not specify other observable elements of Lin's "look or manner" that led to the IJ's finding that his demeanor was evasive, such as "long pauses" in Lin's testimony, *Min Jian Jiang v. Barr*, 799 F. App'x 39, 42 (2d Cir. 2020), or actions "that suggested [Lin] was trying to recall a script." *Zeng Guang Huang v. Holder*, 342 F. App'x 716, 717 (2d Cir. 2009). Therefore, our references to Lin's "evasive[ness]" in this case are based on what is perceivable from the record, specifically, the multiple instances when Lin failed to respond directly to the IJ's questions cited by the IJ and BIA.

4

Lin contends that the inconsistency cannot support the agency's adverse credibility determination because it was an "innocent mistake[]." Petitioner's Br. at 32 (quoting *Gao*, 891 F.3d at 78). He ascribes the error to confusion generated by an incorrect statement first made by Lin's attorney and points out that Lin later corrected the error himself. Lin also blames the inconsistency on his struggles with understanding the interpreter. Finally, he argues that this "lone discrepancy" was trivial and accordingly is insufficient to support the adverse credibility determination. *See* Petitioner's Br. at 27; *see also Gao*, 891 F.3d at 77 ("A trivial inconsistency or omission that has no tendency to suggest a petitioner fabricated his or her claim will not support an adverse credibility determination.").

We are not persuaded. The IJ was best positioned to determine whether Lin's misstatement was an "innocent error" or, rather, was inconsistent testimony bearing on his credibility. *Majidi*, 430 F.3d at 81 n.1. The IJ was not required to accept Lin's explanation that the attorney's question referring to Lin's aunt's location in Texas confused Lin and caused him to misspeak.[3] *See id.* at 80 ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief."). An IJ may draw reasonable inferences among the plausible possibilities and explanations for problematic testimony in the record, and she did so here. *Id.* at 80-81; *see also Matter of D-R-*, 25 I & N Dec. 445, 454 (BIA 2011) (explaining that "[d]rawing inferences from direct and circumstantial evidence is a routine and necessary task of any factfinder, and in the immigration context, the IJ is the factfinder").

In addition, Lin's attempt to blame the inconsistency on his difficulty understanding the interpreter is unavailing.[4] At the threshold, we observe that Lin did not fault the interpreter for the apparent inconsistencies in Lin's responses until this petition for review. He thus failed to exhaust his administrative remedies as to this issue by challenging the adequacy of the interpreting services. *See* 8 U.S.C. § 1252(d)(1); *Severino v. Mukasey*, 549 F.3d

---

[3] Lin does not raise an ineffective assistance of counsel claim.

[4] On appeal, Lin contends that "[t]here were numerous instances of confusion with the interpretation of Lin's testimony throughout [the] proceedings." Petitioner's Br. at 33 n.1.

79, 83 (2d Cir. 2008) (explaining that a petitioner "must raise procedural defects that the BIA has the power to correct"). Neither Lin's 2018 counseled brief nor his 2016 pro se brief to the BIA raised deficiencies in interpreting as an issue. Moreover, Lin retained "[his] own" interpreter, Admin. Record at 349, and affirmed to the IJ that he understood the interpreter.

Finally, Lin argues that his inconsistent testimony about his aunt's location should be disregarded because it bears no legitimate nexus to his claim of past persecution, and therefore is insufficient to support the adverse credibility determination. *Gao*, 891 F.3d at 77. But while the REAL ID Act cautions that a "trivial inconsistency . . . that has no tendency to suggest a petitioner fabricated his or her claim will not support an adverse credibility determination," the Act clearly "authorizes an IJ to rely on *any* inconsistency or omission in making an adverse credibility determination, even one collateral or ancillary to an applicant's claims." *Id.* Here, the IJ was justified in finding Lin not credible based on his inconsistent statement concerning his aunt's location in the United States, coupled with his repeatedly evasive answers to questions covering a range of subjects, even if some of them did not go to the heart of his claims. *Xiu Xia Lin*, 534 F.3d at 165 (noting that "[t]he REAL ID Act freed an IJ from the nexus and materiality requirements by explicitly stating that an IJ may base an adverse credibility determination on any inconsistencies, 'inaccuracies or falsehoods . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.'" (quoting 8 U.S.C. § 1158(b)(1)(B)(iii))).[5]

Thus, considering the totality of the circumstances, we conclude that the agency's credibility determination is reasonably supported by sufficient evidence. Lin has not "demonstrate[d] that a reasonable fact-finder would be *compelled* to credit his testimony." *Majidi*, 430 F.3d at 80; *Xiu Xia Lin*, 534 F.3d at 166 (explaining that where the adverse

---

[5] Lin also contends that the IJ's findings regarding his non-responsiveness and evasiveness about whether he was charged by police and his aunt's visit in China are trivial, arguing that they do not directly relate to his claim of past persecution. His evasiveness about whether he was charged by police when he was detained and whether he had proof of any such charges, however, directly relates to his claim that he was persecuted for his religious practices. Additionally, Lin's evasiveness and non-responsiveness when questioned about his aunt's visit to China is relevant to evaluating whether Lin timely filed his asylum application under § 1158(a)(2)(B). Therefore, we conclude that the IJ's findings are not related to "trivial" testimonial issues. Petitioner's Br. at 37.

6

credibility finding is based on "specific examples . . . of inconsistent statements or contradictory evidence, a reviewing court will generally not be able to conclude that a reasonable adjudicator was compelled to find otherwise"). Accordingly, we defer to the agency's adverse credibility determination.

**3.      Proffered corroborative evidence.** In light of the agency's adverse credibility determination, the agency also reasonably determined that the record evidence was insufficient to corroborate Lin's testimony or independently to warrant a finding of persecution. *See Biao Yang*, 496 F.3d at 273 ("An applicant's failure to corroborate his . . . testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question.").

Lin contends that the agency erred in faulting him for failing to submit evidence regarding the medical treatment he received after his alleged mistreatment. Lin also contends that the agency erred in giving "diminished" weight to his unsigned and unauthenticated detention records and to letters from Lin's father and his friend. Special App'x at 4, 17. We disagree. Having determined that Lin's testimony lacked credibility, the agency did not err in concluding that the evidence he submitted failed to rehabilitate his testimony or independently satisfy his burden of proof.

Regarding Lin's claim that he was detained and beaten by authorities for practicing Christianity at an underground church, the IJ and the BIA reasonably determined that the record evidence was insufficient to satisfy Lin's burden of proof, in part, because he "did not submit any medical evidence regarding any treatment he received for his alleged mistreatment." Special App'x at 16. Because the IJ had already found that Lin's claims were not otherwise credible based largely on the record evidence and Lin's testimony, the agency reasonably relied on the absence of corroborating evidence, such as medical records, to bolster that determination. *Biao Yang*, 496 F.3d at 273.

The IJ's conclusion that Lin failed to meet his burden of proof was also based on "the [insufficient] evidence in the Record of Proceedings" and Lin's testimony regarding the severity of the alleged beating, which the IJ found not credible because it lacked "specific[s]

7

and details" regarding the nature and location of Lin's injuries. Special App'x at 16; *see also* 8 U.S.C. § 1158(b)(1)(B)(ii) ("In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record.").

Additionally, the documents Lin submitted regarding his detention were not signed and authenticated. It is true that the agency could not properly reject the documents from his village authorities reflecting Lin's detention, fine, and release merely because they were not authenticated and did not strictly comply with the BIA's requirements. *Shunfu Li v. Mukasey*, 529 F.3d 141, 149 (2d Cir. 2008). Still, the Court affords the IJ "considerable flexibility in determining the authenticity of such documents from the totality of the evidence" including "any adverse finding respecting a petitioner's credibility." *Id.* Here, the documents were neither signed nor authenticated, and the IJ had already made an adverse credibility finding as to Lin's testimony principally on grounds unrelated to the contents of the documents. Therefore, the agency reasonably rejected these documents as corroborating evidence sufficient to establish Lin's claim.

Finally, although Lin submitted letters from his father and a friend to support his allegations that he had been detained, the agency reasonably gave the letters "diminished evidentiary weight" because they were not given under oath and "contain[ed] no indicia of reliability." Special App'x at 4, 17.

"We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013). In Lin's case, we see no reason to depart from that practice. And even if the agency erred in weighing the evidence described above, based on the agency's adverse credibility determination—which rested largely on testimony unrelated to the proffered documentary evidence—and the totality of the evidence in the record, we are confident the agency "would necessarily reach the same result absent errors."[6] *See Cao He Lin v. U.S. Dep't of Just.*, 428 F.3d 391, 395

---

[6] Similarly, Lin also contends that the Board exceeded the permissible scope of its review when it observed that the letters' signatories were not available for cross-examination. Because the IJ determined the letters

(2d Cir. 2005). Accordingly, we affirm the agency's determination that Lin's corroborative evidence failed to rehabilitate his testimony or to provide independent grounds for relief.

We thus conclude that the agency did not err in concluding the Lin failed to carry his burden to show an entitlement to relief. Because Lin's three claims for relief rest on the same factual predicate, our conclusion is dispositive of his petition for asylum, withholding of removal, and CAT relief. *See Paul v. Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006).

* * *

We have considered Lin's remaining arguments and find in them no basis for disturbing the agency's decision. Accordingly, the petition for review is **DENIED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

---

carried "no indicia of reliability," however, we conclude that any error in the BIA's determination in this respect is harmless. *See Cao He Lin*, 428 F.3d at 395.